### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

MARK F.,[1]                                )
                                           )
                    Plaintiff,             )
                                           )          CIVIL ACTION
v.                                         )
                                           )          No. 21-2034-JWL
KILOLO KIJAKAZI,[2]                        )
Acting Commissioner of Social Security,    )
                                           )
                    Defendant.             )
_____    )


### MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)

benefits pursuant to sections 216(i), 223, 1602, and 1614, Title II and Title XVI,

respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c

(hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ)

decision, the court ORDERS that judgment shall be entered pursuant to the fourth

sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

## I.      Background

Plaintiff protectively filed applications for DIB and SSI benefits on May 23, 2017. (R. 311, 319).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in failing to follow the Order of the Appeals Council on remand, in finding substance abuse is a material factor contributing to the determination of disability, in evaluating the medical opinions of Dr. Quillen and of Dr. Duclos, the state agency psychological consultant, and in assessing Plaintiff's residual functional capacity (RFC).

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only <u>supports</u> [a contrary] conclusion, but <u>compels</u> it." <u>I.N.S. v. Elias-Zacarias</u>, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005); <u>see also</u>, <u>Bowling v. Shalala</u>, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues <u>de novo</u>, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the errors alleged in what it finds is a logical order considering the nature of the decision at issue and the nature of Plaintiff's arguments.

## II.   Appeals Council's Remand Order

Plaintiff claims the ALJ failed to follow the remand order of the Appeals Council and made findings beyond the scope of that order. He argues, "the ALJ completely ignored the order of the Appeals Council and instead issued a decision that was nearly identical in every respect to his prior decision." (Pl. Br. 12). He argues the Appeals Council (AC) found the ALJ used vague terms such as "accept basic supervision" in the

4

prior decision and told him not to use such terms, but that in the current decision the ALJ nevertheless used the identical term and used other vague terms such as "occasional interaction with co-workers." (Pl. Br. 13) (quoting R. 28).  He argues that instead of providing analysis on limitation in Plaintiff's ability to regulate emotions, control behavior, and maintain well-being in a work setting as the AC ordered, the ALJ merely found in the absence of substance abuse Plaintiff would have mild limitations in the functional area of adapting and managing oneself—where he found moderate limitations in the prior decision.  Id.  He argues the evidence relied upon by the ALJ in doing so is a "sweeping overgeneralization" and most of the record shows that Plaintiff when not intoxicated was actively experiencing visual hallucinations and suicidal thoughts with a plan and was, therefore, unable to adapt or manage himself." Id. at 13-14 (citing R. 733, 736).  He argues the ALJ's consideration of Plaintiff's limitations "in understanding, remembering, or applying information and adapting or managing oneself … ignores compelling evidence" in Dr. Quillen's report.  Id. at 14.

The Commissioner argues the ALJ complied with the AC's remand order.  She argues, "The Appeals Council did not mandate that the ALJ make any particular findings, and the additional actions the ALJ took to address the issues identified were not inconsistent with the remand order." (Comm'r Br. 15).  She points out that Plaintiff brought this issue up in his appeal seeking further review by the AC but the Council "found no error warranting further administrative review." Id. (citing R. 1, 483-87).

In her Reply Brief Plaintiff argues "the ALJ made findings of fact and conclusions of law which were essentially identical in every respect to those in his first decision,

despite the clear directives from the Appeals Council in its order of remand." (Reply 4). She argues that a reasonable factfinder should not "be asked to accept as credible the fact that after making a new and independent decision and having followed the clear directives of the Appeals Council's Order of Remand, the ALJ's decision would remain absolutely identical in every meaningful way." Id.

As the Commissioner points out, the Tenth Circuit has recently resolved the standard for considering an allegation that the ALJ failed to comply with a remand order of the Appeals Council. (Comm'r Br. 8) (citing Noreja v. Comm'r, SSA, 952 F.3d 1172, 1178, 1180 (10th Cir. 2020)). Although the court does not have subject matter jurisdiction to review the AC's order, the court "may consider whether the ALJ complied with any legal requirements imposed by the Appeals Council upon remand." 952 F.3d 1180. This consideration is similar to the court's "measuring the ALJ's decision against other legally binding regulatory requirements concerning the collection and assessment of evidence." Id. The Noreja court recognized, "The language in the Appeals Council's order is significant." Id. at 1181.

The AC remanded to the ALJ "for resolution of" three issues. (R. 170). First, the Council noted the term "basic level" as used by the ALJ in the first decision in finding that Plaintiff "would retain the ability to accept supervision on a basic level" was vague. It noted that "[n]onspecific qualifying terms are too broad to allow any reasonable understanding of the degree of limitation involved and should not be utilized in a residual functional capacity." Id. Second, the AC noted the ALJ found in the first decision that if Plaintiff stopped his substance use he would still have moderate limitations in all four

broad mental functional areas, but did not include any limitations corresponding to the mental area of adapting or managing oneself.  (R. 170).  Finally, the AC noted that in considering Plaintiff's condition when including substance use disorder the ALJ found Plaintiff's condition meets Listing 12.04 because he has marked limitations in two broad mental functional areas but did not "indicate what limitations if any that the claimant may have in understanding, remembering or applying information and in adapting or managing oneself."  Id. at 171.  After noting each of the areas for resolution the AC stated, "Further consideration is needed."  Id. at 170, 171.

Then, the AC stated the ALJ "will" (1) further evaluate Plaintiff's mental impairments in accordance with the Commissioner's psychiatric review technique and document his "application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas."  (2) "Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations," and (3) "Obtain supplemental evidence from a vocational expert" in accordance with regulatory and Social Security Ruling standards.  Id. 171.

The court finds no error in the ALJ's response to the AC order.  The ALJ further considered the three issues the Council stated needed further consideration and he took the steps the Council told him to take.  In the decision after remand from the AC, the ALJ found Plaintiff would retain "the ability to accept occasional supervision" (R. 25) (finding no. 6) (bold omitted) rather than "the ability to accept supervision on a basic level" (R. 157) (finding no. 7) (bold omitted) which he used in the first decision and

which the Council found was vague.  Plaintiff argues that finding a limitation is "occasional" is also a vague term but "occasional" is a term of art in Social Security disability determination and is defined as "occurring from very little up to one-third of the time."  Soc. Sec. Ruling (SSR) 83-10, 1983 WL 31251, *5 (SSA 1983).  Plaintiff is correct that in his summary of his RFC assessment the ALJ again stated Plaintiff "would retain the ability to accept supervision on a basic level" (R. 28), but his earlier finding that Plaintiff would retain "the ability to accept occasional supervision" (R. 25) clarifies any vagueness introduced by the later statement.  Moreover, as the AC ordered him to do, the ALJ obtained supplemental evidence from a vocational expert (VE) and in complying with that order, the ALJ provided a hypothetical question to the VE in which he included the limitation to "accept occasional supervision."  (R. 86).

The ALJ gave further consideration to the issue of limitations in the broad mental functional area of adapting and managing oneself if Plaintiff stopped his substance use. In the second decision, the ALJ found that if Plaintiff stopped abusing alcohol he would only have mild limitations in this mental functional area.  (R. 23).  He explained:

> The claimant continues to maintain his own self-care tasks and grossly normal activities of daily living.  The record does not support episodes of significant emotional dysregulation or decompensation when he is not abusing alcohol.  As detailed below, when not using alcohol he did not require any type of inpatient treatment.

Id.  As noted here, the ALJ complied with the AC order regarding this issue.  Plaintiff's arguments that this and other findings of the ALJ are erroneous will be addressed later in this decision.

The AC's third issue was that the ALJ when assessing Plaintiff's limitations in the four broad mental functional areas when including substance abuse did not "indicate what limitations if any that the claimant may have in understanding, remembering or applying information and in adapting or managing oneself." Id. at 171. In the second decision, the ALJ gave further consideration and explained his findings. "[T]he claimant has marked limitations in interacting with others and in concentrating, persisting, or maintaining pace. The claimant has moderate limitations in understanding, remembering or applying information, and adapting and managing ones self [sic]." (R. 21).

As noted above, the ALJ gave further consideration to each of the issues identified by the AC. The same discussion reveals the ALJ complied with all three orders of the AC. He provided further evaluation of Plaintiff's mental impairments, he gave further consideration of and provided rationale for Plaintiff's maximum RFC, and he obtained supplemental evidence from a VE. More was not required. That the ALJ's evaluation was not erroneous will be discussed hereinafter.

The fact the ALJ reached the same conclusion after further consideration and after applying the legal standard as explained by the Council is not surprising and is not error. The Council did not dictate an outcome to the ALJ's consideration or application. If the Council determined a particular outcome was required, it could have so directed or it could have made its own decision. 20 C.F.R. §§ 404.967, 404.979, 416.1467, 416.1479. Moreover, as the Commissioner points out, Plaintiff made this argument to the AC in his request for review and the Council denied that request. (R. 1).

### III.    Plaintiff's Remaining Arguments

Plaintiff claims the ALJ made three additional errors in evaluating this case.  First, he claims the ALJ erred in determining substance abuse is a material factor contributing to the finding that Plaintiff is disabled when abusing alcohol and drugs.  Second, he claims the ALJ erred in evaluating the medical opinions of Dr. Quillen, who examined Plaintiff and provided a report of that examination, and the opinion of the state agency psychological consultant, Dr. Duclos.  Finally, he claims the ALJ erred in assessing an RFC if Plaintiff stopped abusing alcohol and drugs which would permit a range of work at all exertional levels but is limited by mental impairments to simple, routine, and repetitive tasks with occasional interaction with co-workers, no interaction with the general public, and the ability to accept occasional supervision.

All Plaintiff's claims in this regard rest on the argument that Plaintiff exhibited the same behaviors and limitations during periods when he was not intoxicated as when he was intoxicated.  In Plaintiff's view this is so because during his hospitalizations there is no reason to believe Plaintiff was intoxicated yet he continued to have the same limitations and behaviors from which the ALJ determined he was disabled while he used drugs and alcohol.  (Pl. Br. 18-20, 23-24, 28).  This argument is based on a misunderstanding of the Act and regulations regarding Drug Addiction and Alcoholism (DAA).

## A.    Substance Abuse Is A Material Factor in Determining Disability

The Act provides that an individual shall not be considered disabled "if alcoholism or drug addiction would … be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  To implement

this law, the Commissioner promulgated regulations explaining, "How we will determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."  20 C.F.R. §§ 404.1535, 416.935.  The Commissioner explains the process to be followed:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
>> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>>
>> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

Id. §§ 404.1535(b), 416.935(b).  In a case involving DAA, the Commissioner applies the sequential evaluation process once to determine whether the claimant has disabling limitations considering all his limitations including those caused by DAA.  If he is so disabled, then in accordance with subparagraph (b)(2) the Commissioner applies the sequential evaluation process again considering only the limitations which "would remain if [the claimant] stopped using drugs or alcohol."  Id.  If the remaining limitations are not disabling, "drug addiction or alcoholism is a contributing factor material to the

determination of disability," id., and the claimant "shall not be considered to be

disabled." 42 U.S.C. 423(d)(2)(C).

Plaintiff argues that when he has been hospitalized for acute psychiatric problems

resulting from drug or alcohol use but is no longer ingesting those substances, has

metabolized them, and is "sober" or no longer "intoxicated" he has "stopped using drugs

or alcohol" within the meaning of the regulations. 20 C.F.R. §§ 404.1535(b)(2),

416.935(b)(2). Plaintiff then points out that for much of his hospitalizations he continues

to have the same limitations from which the ALJ determined he was disabled, and argues

the ALJ should have found DAA is not a material factor contributing to the determination

of disability.

Plaintiff's understanding is erroneous. The Commissioner has explained how

periods of abstinence are considered.

9. How do we consider periods of abstinence?

a. Each substance of abuse, including alcohol, has different intoxication
and long-term physiologic effects. In addition, there is a wide variation in
the duration and intensity of substance use among claimants with DAA, and
there are wide variations in the interactions of DAA with different types of
physical and mental disorders. For these reasons, we are unable to provide
exact guidance on the length and number of periods of abstinence to
demonstrate whether DAA is material in every case. In some cases, the
acute and toxic effects of substance use or abuse may subside in a matter of
weeks, while in others it may take months or even longer to subside. For
some claimants, we will be able to make a judgment about materiality
based on evidence from a single, continuous period of abstinence, while in
others we may need to consider more than one period.

Titles II & XVI: Evaluating Cases Involving Drug Addiction & Alcoholism (DAA), SSR

13-2P; 2013 WL 621536 *11-12 (S.S.A. Feb. 20, 2013) (emphases added) (footnote

omitted).  The point in cases such as this is not the claimant's condition and limitations

on any given day when he is sober or not intoxicated, but his condition and limitations if

he has "stopped using drugs or alcohol."  20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

Plaintiff's arguments do not address this issue.  The ALJ, however, did.  He noted

that the medical evidence does not document medical signs demonstrating that Plaintiff

has a marked or extreme limitation in any of the broad areas of mental functioning when

he is abstaining from drugs and alcohol.  He explained, that in such periods of abstinence

"the claimant's mental impairments are controllable with psychotropic and anti-psychotic

medication.  When so treated, the claimant presents with no more significant clinical

abnormalities than a depressed and/or anxious mood with a blunted affect."  (R. 23-24).

The ALJ specifically discussed treatment notes from December 2017 and April

2018 when Plaintiff reported drinking, but "only drinking socially:"

> In December 2017, he was seen at Bert Nash for a follow up examination
> (Exhibit 11F, p. 8 [R. 736]).  At that time, he reported that he was doing
> okay.  He reported that his anxiety and depression had been reduced.  He
> reported that the voices in his head were gone.  He reported some brief self
> harm thoughts, but reported he would not act on those thoughts.  He
> reported that he was only drinking socially at that time.  His mental status
> examination from that time showed that he was alert and fully oriented.  He
> exhibited good grooming and hygiene.  He was calm and cooperative and
> made good eye contact.  His mood was depressed and anxious.  His thought
> processes were linear and goal directed.  He denied hallucinations and he
> did not exhibit any evidence of delusions or obsessions.  His insight and
> judgment were fair.  He was maintained on his medication regimen of
> Trazodone, Quetiapine, Prazosin, and Citalopram (Exhibit 11F, p. 8 [R.
> 736]).
>
> He returned for treatment in April 2018 (Exhibit 11F, p. 6 [R. 734]).  At
> that time, he was calm and quiet with some elevated anxiety (Exhibit 11F,
> p. 6 [R. 734]).  His affect was congruent with his mood which he reported
> was generally okay.  He did not exhibit any psychosis.  He was alert and

oriented and his thought processes were goal directed.  These findings are not reflective of him having disabling limitations from his impairments when he is sober.

He has required intermittent treatment when he is not abusing alcohol.  He has received some medication management for his mood disorder and psychosis.  However, he did not require any type of inpatient or emergency care when sober from alcohol.  As such, the record is not reflective of him having disabling limitations when he is not abusing alcohol.

(R. 25-26).

## B.    Medical Opinions

Plaintiff applies the same understanding to the ALJ's evaluation of Dr. Duclos's opinion.[3]  (Pl. Br. 23) (Dr. Duclos's statement that Plaintiff's condition improves when he stops using drugs and alcohol "is incorrect because of Plaintiff's multiple hospital stays where his condition did not improve much while abstaining from alcohol consumption.").  Dr. Duclos applied the Psychiatric Review Technique to consider Plaintiff's condition including DAA and found him disabled because he had marked limitations in two broad mental functional areas.  (R. 118-20).  She then applied the technique to consider Plaintiff's level of functioning "were he to abstain from DAA use." Id. at 120.  She discussed specific evidence from 2013 through 2017, id. at 121 (citing R. 507, 509, 578, 699), and found Plaintiff would not be disabled if he abstained from DAA

---

[3] The court recognizes that the evaluations performed by state agency physicians and psychologists such as Dr. Duclos are more correctly called prior administrative medical findings.  20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5).  However, they are evaluated in the same manner and by the same standards as medical opinions, 20 C.F.R. §§ 404.1520c, 416.920c and are commonly called medical opinions.  The court follows the common practice here.

use. (R. 126). The ALJ explained his evaluation of Dr. Duclos's opinion and found it partially persuasive because she was a state agency consultant familiar with the disability determination process and the regulations, including the terms of art and legal and medical standards; she based her opinion on a comprehensive review of the record; and provided a narrative explaining the evidence relied upon in reaching her conclusion. Id. 27. He rejected Dr. Duclos's opinion Plaintiff can complete 3 to 4 step tasks, however, explaining, "Even when sober [Plaintiff] continues to have some depression that would likely interfere with his ability to perform this level of tasks." Id. Plaintiff has shown no error in the ALJ's evaluation of Dr. Duclos's opinions.

Plaintiff argues the ALJ erred in discounting Dr. Quillen's opinion without adequate explanation or citing substantial evidence. The court disagrees. The ALJ summarized Dr. Quillen's examination of Plaintiff and explained his evaluation of Dr. Quillen's opinion:

> The claimant attended a consultative examination with Marc Quillen, Ph.D. on November 15, 2017. During the examination, the claimant was notably vague in his description as to what difficulties he possesses in an employment setting beyond stating that, "it's just hard, man." (Exhibit 10F 2 [R. 718]). He admitted to alcohol abuse, drinking to intoxication on a near-daily basis, and he appeared intoxicated during the examination. Upon testing, it was "extremely difficult" for the examiner to elicit coherent responses. He was unsteady, not fully alert, disorganized, highly distractible, appeared to be responding to internal stimuli, and dysthymic. He also demonstrated excessive speech latency. (Exhibit 10F, p. 3-4 [R. 719-20]).

(R. 22).

> The opinion of Marc A. Quillen. Ph.D. is partially persuasive. (Exhibit 10F [R. 717-28]). The opinion of Dr. Quillen is based upon and supported by the findings of a contemporaneous mental status examination.

> Additionally, his opinion is general [sic] well-explained.  However, he only had the benefit of reviewing the claimant's mental status at a time when he was intoxicated.  Because he did not examine the claimant at a time when the claimant was sober, or review records documenting the claimant's mental status at a time of sobriety, his opinion is unpersuasive when assessing the claimant's residual functional capacity absent substance abuse.

(R. 27).  From this evaluation, it becomes clear the ALJ accepted Dr. Quillen's opinion of disabling limitations when considering DAA, but did not apply Dr. Quillen's opinion to his consideration of limitations when not including DAA.  Clearly, the ALJ provided his rationale for doing so, and that rationale is supported by the record evidence.  Moreover, as the Commissioner's Brief suggests, Dr. Quillen himself stated his opinion that Plaintiff "was mildly intoxicated during the interview," and that "it was difficult to differentiate between reduced responsiveness due to intoxication or cognitive impairment from attempts to bias the interview."  (R. 721).

Dr. Quillen also discussed providing an opinion regarding Plaintiff's functioning if he stopped using drugs and alcohol:

> Determination of employability and disability for [Plaintiff] is complicated by the same issues noted above in determining diagnoses (current intoxication, cognitive impairment, and the difficulty of obtaining a consistent history).  The most significant absent variable in this determination is the extent to which [Plaintiff]'s functional ability would improve with sobriety, given that there are clear indications of neurocognitive decline and a significant mood disorder which would persist in the absence of alcohol use.  However, given [Plaintiff]'s clear unwillingness/inability to pursue sobriety, this is, essentially, a moot point. The following determination is based on [Plaintiff]'s current status, as this examiner is unwilling to predict future functioning on the basis of an unlikely sobriety.  It is notable that the following difficulties are almost entirely the result of [Plaintiff]'s severe alcohol use disorder.

(R. 726) (underline in original omitted) (underlines here added for emphasis).

Plaintiff has shown no error in the ALJ's evaluation of Dr. Quillen's opinion.

**C.**    **RFC Assessment**

Plaintiff's RFC argument rests largely on his understanding as discussed above. (Pl. Br. 26) ("The ALJ has made numerous errors in assessing Plaintiff's limitations, and ignored significant evidence of the record.  See infra.").  His remaining RFC arguments relate primarily to evidence of functioning when including DAA without distinction for when Plaintiff has stopped using drugs and alcohol.  Consequently, what remains is Plaintiff's insinuation that the court should reweigh the evidence and substitute its judgment for that of the ALJ as to Plaintiff's functioning when he is not using drugs and alcohol.  As noted in the legal standard laid out previously in this decision, the court may not do so.  Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.  Moreover, the record evidence supports the ALJ's decision as noted above.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated February 10, 2022, at Kansas City, Kansas.

s:/  *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**

17